FILED

2021 Nov-01  PM 03:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL CARROLL,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:20-cv-757-CLM** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner** | ) | |
| **of the Social Security** | ) | |
| **Administration,** | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Michael Carroll seeks disability and disability insurance benefits from the Social Security Administration ("SSA") based on several impairments. The SSA denied Carroll's application in an opinion written by an Administrative Law Judge ("ALJ"). Carroll argues: (1) that the ALJ failed to adequately evaluate his subjective pain testimony; and (2) that the ALJ didn't articulate good cause for finding his treating psychiatrist's opinion only somewhat persuasive.

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports her decision. So the court will **AFFIRM** the SSA's denial of benefits.

I.    **Statement of the Case**

A.    **Carroll's Disability, as told to the ALJ**

Carroll was 34 years old at the time of the ALJ's decision. R. 21, 85. Carroll has a high school education and has past relevant work as a surveillance system monitor and store laborer. R. 43, 59.

At the ALJ hearing, Carroll testified that he experiences 20 to 23 "bad days" a month in which he has such severe depression and anxiety that it causes him to stay in bed most of the day. R. 56. He also reported difficulties with memory, completing tasks, concentration, understanding, following instructions, and getting along with others. R. 29, 212. And he stated that he has OCD that causes him to pull out his hair. R. 56–57. But he explained that his treatment has helped him function better and has limited the hair pulling. R. 57.

Carroll lives with his wife, daughter, and mother. R. 43. He rarely drives but tries to work out for at least an hour a day. R. 44. On a typical day, Carroll takes care of his daughter with help from his mother. *Id.* If he feels able, Carroll will help with chores, like sweeping and mopping. *Id.* But sometimes Carroll's depression and anxiety are so bad that all he can do is lay around the house, and his mom must take care of his daughter. R. 46. Carroll also spends his time scrolling through social media, reading, and writing song lyrics to take his mind off of everything R. 47.

**B.     Determining Disability**

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis. The intermediate step of

determining Carroll's residual functional capacity is the most important step here, as all of Carroll's challenges flow from the ALJ's decision at this juncture.

### C.    Carroll's Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Carroll applied for disability insurance benefits and a period of disability in December 2017, claiming that he was unable to work because of various ailments, including trichotillomania, anxiety, depression, and personality disorder with obsessive compulsive features. After receiving an initial denial in March 2018, Carroll requested a hearing, which the ALJ conducted in March 2019. The ALJ ultimately issued an opinion denying Carroll's claims in May 2019. R. 24–32.

At Step 1, the ALJ determined that Carroll was not engaged in substantial gainful activity and thus his claims would progress to Step 2. R. 26.

At Step 2, the ALJ determined that Carroll suffered from the following severe impairments: trichotillomania, anxiety, depression, and personality disorder with obsessive compulsive features. R. 26.

At Step 3, the ALJ found that none of Carroll's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1. R. 26–28. Thus, the ALJ next had to determine Carroll's residual functional capacity.

The ALJ determined that Carroll had the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations:

- Carroll is limited to simple work related decisions; no decisions or judgments made on executive, managerial, fiscal, or personnel matters; no assembly line work or strictly enforced production quotas; and few changes in the routine work setting.

- Carroll can do no joint projects, processes, or decision making with other coworkers.

- Carroll can be around other employees through the day, but is only capable of occasional conversations and interactions, unable to participate in tandem or group tasks, and can have no more than occasional interaction with the general public.

- Carroll can make simple work related decisions involving the use of judgment.

- Carroll is expected to be absent from work one day per month and to be off task 5% of the time during the workday.

R. 28–31.

At Step 4, the ALJ found that Carroll could perform his past work as a surveillance system monitor and store laborer. R. 31–32. So the ALJ found Carroll not disabled under the Social Security Act. R. 32.

Carroll requested an Appeals Council review of the ALJ's decision. R. 1–7. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.     Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.    Legal Analysis

Carroll makes two arguments for why the ALJ erred. First, Carroll argues that the ALJ incorrectly evaluated his subjective pain testimony. Second, Carroll asserts that the ALJ failed to give good cause for finding his treating psychiatrist's opinion only somewhat persuasive. The court will address each argument in turn.

## A.     Credibility Determination

Carroll first argues that the ALJ's determination that the record only somewhat supported his subjective testimony lacks the support of substantial evidence. An ALJ must apply the two-step "pain standard" to subjective testimony regarding pain and other symptoms. Under this standard, the claimant must first present "evidence of an underlying medical condition." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If he does, the claimant must then either: (a) present "objective medical evidence confirming the severity of the alleged pain," or (b) show "that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *See id.* This court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

In his function report, Carroll reported that he has problems with memory, completing tasks, concentration, understanding, following instructions, and getting along with others. R. 212. And at the ALJ hearing, Carroll testified that 20 to 23 days a month he has such severe depression and anxiety that he must stay in bed most of the day. R. 56. He also said that he started seeking treatment because his wife and mom pointed out that he "was literally laying in the bed all day doing absolutely nothing." R. 51. But, as Carroll acknowledges, he also stated that his

treatment has helped him have more days where he is "able to get up and actually function." R. 57.

The ALJ found these alleged limitations "somewhat supported by the record," noting that Carroll had reported multiple episodes of depression with pulling out his hair, took Prozac, went to therapy, and had ongoing struggles with anxiety. R. 29. But the ALJ determined that Carroll's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

1. Medical evidence: Substantial evidence supports the ALJ's credibility determination. As the ALJ noted, though Carroll reported about 20 "bad days" a month, he does not have a history of psychiatric hospitalizations or emergency room visits. Instead, Carroll's treatment consists of taking medication, such as Prozac, and attending monthly counseling sessions. R. 309. This conservative course of treatment undermines Carroll's statement that he had such severe anxiety and depression that he must stay in bed 20 to 23 days a month. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (affirming ALJ's finding that conservative treatment undermined the claimant's subjective testimony).

The ALJ also correctly noted that throughout the relevant period Carroll's mental status examinations found that Carroll was oriented to person, place, and time; had good insight and judgment; had logical thought process; had thought

content within the normal limits; had good appetite; had good energy/motivation; had intact immediate, recent, and remote memory; and had an appropriate appearance. R. 266–67, 272, 281, 303, 310–311, 322, 342. And Carroll reported that since beginning treatment, he had decreased his hair pulling episodes. R. 316, 343, 345, 349. Plus, though Carroll struggled with anxiety throughout the relevant period, his depression improved with medication and counseling. For example, after his first visit with his psychiatrist, Dr. Shehi, Carroll did not display a depressed mood. R. 266, 281, 322.

Carroll's consultative examination also supports the ALJ's credibility determination. The consultative examiner found that Carroll's thought processes, thought content, mood, and affect were largely within normal limits. R. 310–11. And the consultative examiner observed that though Carroll said his compulsions caused him to pull out his eyebrow hair, the examiner did not see evidence of hair pulling. R. 309. The consultative examiner also observed that Carroll's hands weren't red, which conflicted with his statements that he washed his hands between 20 and 40 times a day. *Id.* The consultative examiner then found that Carroll could: (1) understand, carry out, and remember simple instructions, and (2) respond appropriately to supervision, coworkers, and work pressures in a work setting unless his obsessive compulsive personality disorder got in the way. R. 312–13.

The court rejects Carroll's argument that the ALJ "cherry-picked" the medical evidence when evaluating Carroll's subjective testimony. To the contrary, the ALJ recognized that Carroll's reported depression, hair pulling episodes, prescription of Prozac and therapy, and ongoing struggles with anxiety supported the limitations that he alleged. R. 29. The ALJ then accounted for Carroll's symptoms of anxiety, depression, and compulsive tendencies when fashioning his residual functional capacity. R. 31. But the ALJ found that the objective medical evidence did not support Carroll's testimony about the limiting effects of his symptoms. "In other words, the [ALJ] found that [Carroll's] condition could reasonably be expected to give rise to some pain, but it did not give rise to the *claimed* pain." *Whitmore v. Soc. Sec. Admin. Comm'r*, 855 F. App'x 641, 643 (11th Cir. 2021) (quotations omitted).

To be sure, the ALJ didn't refer to every medical record when reaching her decision. But "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" as long as the decision is not "a broad rejection" that casts doubt on whether the ALJ considered the claimant's "medical condition as a whole." *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). And here, the ALJ adequately considered medical evidence both favorable and unfavorable to Carroll when assessing his credibility.

2. Daily life activities evidence: Aside from finding that the objective medical evidence undermined Carroll's subjective testimony, the ALJ also found several of

Carroll's daily life activities to contradict his testimony. For example, the ALJ noted that Carroll showers daily, performs household chores, runs 30 minutes 5-6 days a week, and lifts weights for an hour 5 times a week. R. 30. She also observed that Carroll reported playing with his daughter, watching TV, and using the internet for social media/checking sports news and scores. *Id.* Finally, the ALJ found it significant that Carroll can write song lyrics, prepare simple meals for his daughter, sometimes go grocery shopping with his wife, and pay bills. *Id.*

A claimant's admission that he participates in daily activities for short durations does not disqualify the claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), but it is appropriate for an ALJ to consider daily activities relevant to a claimant's subjective pain allegations. *See* 20 CFR §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).

Carroll asserts that the ALJ's description of his daily activities were inaccurate because she did not note several limitations Carroll identified when reporting his activities. For example, Carroll testified that he "very rarely" drives and that he "tries" to make himself work out for at least an hour a day. R. 44. And he reported that his mom helps him care for his daughter and that he helps with chores around the house only if he feels able to do so. *Id.* Carroll also said that his "mother and wife fix most of my meals" but that he "can fix sandwiches and some frozen dinners." R. 209.

11

But Carroll did report engaging in the activities that the ALJ identified in her decision, so the ALJ didn't misstate the facts. And though Carroll qualified his level of activity, it was still appropriate for the ALJ to consider Carroll's daily activities when assessing his subjective testimony. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). So the ALJ did not err in considering Carroll's daily activities as one of several factors that supported her credibility determination.

* * *

In summary, having reviewed the medical and non-medical evidence in the record, the court finds that a reasonable person could have reached the same credibility determination as the ALJ. So even though the court may have made a different credibility determination, the ALJ did not reversibly err. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether ALJ could have reasonably credited [Carroll's] testimony, but whether the ALJ was clearly wrong to discredit it.").

## B.    Opinion of Treating Psychiatrist

Carroll next asserts that the ALJ erred by failing to articulate good cause for discounting the opinion of his treating psychiatrist, Dr. G. Michael Shehi. But, as the Commissioner notes, the SSA has recently revised its regulations on the consideration of medical opinions. Under the new regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any

medical opinion(s)" for all claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c(a). Instead, the ALJ should focus on the persuasiveness of the opinion by looking at the opinion's supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but need not, explain how he considered other factors, such as the medical source's relationship with the claimant and specialization, when assessing a medical opinion. *See id.*

Carroll applied for disability in December 2017. And he has not filed a reply brief that disputes the Commissioner's argument that the new regulations—not the old treating physician rule—apply to his disability claim. So the court will apply the new standard to the ALJ's evaluation of the opinion evidence.[1]

Under this new standard, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). And "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

---

[1] Even if the court applied the old standard, the ALJ likely had good cause to discount Dr. Shehi's opinion. Good cause to discount a treating physician's opinion exists "when the: (1) treating physician opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quotations omitted). And, as explained below, substantial evidence supports the ALJ's determination that Carroll's mental status examinations contradicted Dr. Shehi's findings.

In July 2018, Dr. Shehi filled out a two-page residual functional capacity supplemental questionnaire on behalf of Carroll. R. 336–37. Dr. Shehi's responses to the questionnaire stated that Carroll had "moderately severe" limitations in most areas. *See id.* For example, Dr. Shehi stated that Carroll had moderately severe limitations in performing work with either frequent or minimal contact with others, performing complex tasks, and relating to other people. *Id.*

The ALJ found Dr. Shehi's opinion "somewhat persuasive." R. 31. The ALJ recognized that "Dr. Shehi's opinion of moderate limitations are consistent with [Carroll's] history of multiple episodes of depression with compulsions such as pulling out his hair, [Carroll's] use of medications, and ongoing anxiety." *Id.* But the ALJ found that Carroll's "largely normal mental status examination findings" didn't support Dr. Shehi's findings that Carroll had moderately severe limitations. *Id.* As the ALJ noted, these mental status examinations consistently found that Carroll "was oriented to person, place, and time, had good insight and judgment, logical thought process, thought content within normal limits, good appetite, good energy/motivation, intact immediate, recent, and remote memory, and appropriate appearance." *Id.*

Unlike Dr. Shehi's opinion, the ALJ found the opinions of Dr. Estock, the state agency psychological consultant, and Dr. Bodenheimer, the consultative examiner, persuasive. R. 30–31. Dr. Estock found that Carroll could understand and

remember simple instructions, follow directions, find locations, and concentrate on simple task for two-hour periods. R. 30. But he determined that Carroll needs all rest periods and a flexible schedule, can have only casual social contact, and can adapt to only gradual changes in the workplace. *Id.* The ALJ found Dr. Estock's opinion persuasive because it was (a) consistent with the mental status examination findings, and (b) supported by the results of Carroll's consultative examination. *Id.*

Dr. Bodenheimer found that Carroll can understand, carry out, and remember simple instructions and respond appropriately to supervision, coworkers, and work pressures in a work setting. *Id.* The ALJ found Dr. Bodenheimer's opinion persuasive because it matched her consultative examination findings. *Id.*

The ALJ's opinion reflects that she adequately evaluated the opinion evidence by considering the factors of supportability and consistency that the new regulations required her to consider. And it was reasonable for the ALJ to find that Dr. Shehi's opinion, which was consistent with some of the objective medical evidence but inconsistent with the mental status examination findings, was less persuasive than the opinions of Drs. Estock and Bodenhimer, which aligned with both the mental status examination findings and other medical evidence in the record. In short, substantial evidence supports the ALJ's assessment of Dr. Shehi's opinion.

## IV.    Conclusion

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**DONE** on November 1, 2021.

_____

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE